IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DIANA BLACK, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 10-03454-CV-S-DGK-SSA |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER AFFIRMING ALJ'S DECISION

Plaintiff Diana Black seeks judicial review of the Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42. U.S.C. § 401, *et seq.*, and her application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has exhausted all administrative remedies, and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

Black alleges she became disabled as of December 31, 2006, due to fibromyalgia, coronary artery disease, depression, and insomnia, and is therefore unable to engage in substantial gainful employment as a matter of law. After independent review of the record, carefully considering the arguments set forth by the parties, the Court finds the Commissioner's decision denying disability and SSI benefits is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are consistent with the Social Security Act, the relevant case law, and the regulations, and whether they are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* In making this determination, the court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Id.* If substantial evidence in the record supports the Commissioner's decision, the court may not reverse because substantial evidence in the records supports a contrary result or because the court may have decided the case differently. *Id.*

## Discussion

To establish entitlement to benefits, Plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of no less than 12 months. 42 U.S.C. §§ 423(d) and 1382(a)(3)(A). To determine a claimant's eligibility for SSI, the Commissioner employs a five-step evaluation process.[1] *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

---

[1] There is a five-step process for determining eligibility. If the fact-finder determines at any step of the evaluation process that the claimant is or is not disabled, the inquiry does not continue. The applicant bears the burden of showing he is disabled from steps one through four of the process. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). At step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Id.* The steps proceed as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, the applicant is not disabled; if not, the inquiry continues. At step two, the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments that has lasted or is expected to last for a continuous 12-month period. If not, the applicant is not disabled; if so, the inquiry continues. At step three, the Commissioner considers whether the impairment or combination of impairments meets the criteria of any impairment listed in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four, the

2

In the instant case, the administrative law judge ("ALJ") found that despite Plaintiff's impairments, she was not disabled and could perform sedentary work with additional postural, environmental, and mental limitations. Plaintiff, however, argues that the ALJ's decision is not supported by substantial evidence on the record as a whole because: (1) the ALJ failed to give controlling weight to the opinion of Plaintiff's treating physician; (2) the ALJ failed to properly assess Plaintiff's residual functional capacity ("RFC"); and (3) the ALJ improperly evaluated Plaintiff's credibility.

**A. The ALJ properly evaluated the opinion of Plaintiff's treating physician.**

Plaintiff argues that the ALJ erred when he failed to give controlling weight to the opinion of Dr. Ling Li, Plaintiff's treating physician. R. at 234. However, because the ALJ determined that Dr. Li's opinion was inconsistent with the record as a whole, he properly assigned Dr. Li's opinion little weight.

Under the Social Security Administration regulations, the opinions of treating physicians are generally entitled to substantial weight. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, despite this deference, the opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). In fact, an ALJ may discount or disregard the opinion of a treating physician where other medical assessments are more thoroughly supported or where a treating physician renders inconsistent opinions. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

The ALJ's determination that Dr. Li's opinion regarding Plaintiff's limitations is entitled to little weight is supported by substantial evidence on the record. Dr. Li completed two medical

---

Commissioner considers if the applicant's residual functional capacity allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five, the Commissioner considers whether, in light of the applicant's residual functional capacity, age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King*, 564 F.3d at 979 n.2.

forms regarding Plaintiff's conditions. In the first, Dr. Li noted that Plaintiff's fibromyalgia and cardiomyopathy caused severe pain and fatigue and opined that Plaintiff could sit for only four hours intermittently during the day, could stand for one hour, and could walk for one hour. Dr. Li also advised Plaintiff not to return to work. R. at 430-1. In the other form, Dr. Li concluded that Plaintiff was capable of lifting five pounds frequently and ten pounds occasionally; standing and walking for forty-five minutes continuously and three hours in a workday; and occasionally climbing, balancing, stooping, kneeling, crouching, crawling, reaching, and handling. R. at 427-28.

After fully reviewing Dr. Li's opinion, the ALJ disregarded Dr. Li's conclusions regarding Plaintiff's capabilities for a few reasons. First, although Dr. Li opined that fibromyalgia was the primary diagnosis preventing Plaintiff from working, Dr. Li's treatment notes did not focus on Plaintiff's widespread pain until late 2007. Even then, there are gaps in Plaintiff's treatment throughout this time. R. at 335, 419, 424-25, 427-28, 431. In addition, in February 2007, Dr. Li indicated that he wanted to refer Plaintiff to Rheumatology to confirm the diagnosis of fibromyalgia. However, the record contains no evaluations by rheumatologists confirming this diagnosis. In fact, Dr. Hayes, the consultative examiner and rheumatology specialist, indicated that Plaintiff's physical limitations from fibromyalgia were "entirely subjective in nature." R. at 471.

Finally, Plaintiff argues that the ALJ failed to give "good reasons" for disregarding Dr. Li's opinion, as required by *Dolph v. Barnhart*. 308 F.3d 876 (8th Cir. 2002). However, the ALJ specifically acknowledged that "a treating physician's medical opinion of the nature and severity of a claimant's impairment may be given great weight if it is well supported and not inconsistent with other substantial evidence in the case record." R. at 52. The ALJ went on to

note that "Dr. Li's opinions are not supported by the results of clinical or diagnostic testing and are inconsistent with the evidence as a whole." R. at 52.

Overall, Dr. Li's opinion was properly discredited. This opinion was contradicted by the other medical evidence of record, and the ALJ properly articulated reasons for discrediting it. Accordingly, the ALJ properly accorded the opinion little weight.

**B. The ALJ properly assessed Plaintiff's RFC.**

After assessing the medical evidence of record, the ALJ concluded that Plaintiff had the RFC to perform sedentary work with the following limitations: occasional bending, stooping crouching, squatting, kneeling, crawling, and climbing stairs or ramps; avoidance of heights, hazardous, unprotected moving machinery, temperature extremes, humidity, dust, fumes, and poor ventilation; and no contact with fast-paced activity, explicit production quotas, deadlines, schedules, or changing work settings. In addition, the ALJ found that Plaintiff is unable to sustain light levels of concentration, cannot sustain precision work or work that requires sustained attention to detail, and is incapable of performing work involving interaction with the general public. R. at 48.

The Court finds this determination supported by substantial evidence of record. Plaintiff's first argument is that the ALJ improperly determined Plaintiff's RFC, failing to provide the specific bridge between the RFC and medical evidence as required by Social Security Regulation 96-8p. In particular, Plaintiff argues that the ALJ failed to consider her insomnia in formulating her RFC and failed to rely on the opinion of Plaintiff's treating physician, Dr. Li. Plaintiff also maintains that the ALJ's RFC assessment is flawed because the ALJ failed to indicate which medical opinion he relied upon in assessing Plaintiff's limitations.

5

Plaintiff asserts that the ALJ failed to provide a "specific bridge" between the RFC and the medical evidence as required by Social Security Ruling 96-8p. An ALJ must base his RFC determination on all evidence of record. *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Social Security Ruling 96-8p specifically requires that an RFC determination include "a narrative discussion describing how the evidence supports each conclusion." Although an RFC is a medical determination, in making this determination the ALJ must rely not only on medical evidence but on all relevant, credible evidence. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

Here, as discussed above, the medical evidence supports the ALJ's determination, and the ALJ thoroughly considered and discussed this evidence in rendering his decision. For instance, the ALJ properly evaluated Plaintiff's credibility, crediting some of Plaintiff's allegations and discrediting others based on the medical evidence on record. The ALJ also properly considered the opinions of consultative examiners and State agency psychological consultants in assessing Plaintiff's RFC. 20 C.F.R. §§ 404.1527(d), 404.1527(f)(2)(i), 416.927(f)(2)(i). Finally, the ALJ properly relied on records showing that Plaintiff failed to seek consistent treatment of mental health problems as evidence of a lack of a severe medical impairment. Because these are all acceptable sources upon which to rely in making an RFC determination, the Court finds the ALJ provided a sufficient bridge between the medical evidence and the RFC.

Plaintiff also argues that the ALJ failed to consider her insomnia in assessing her limitations. The Court finds this argument without merit. The ALJ's failure to mention the diagnosis of insomnia does not mean that the ALJ did not consider it in formulating Plaintiff's RFC. *Wildman v. Astrue*, 596 F.3d at 966. In fact, the record shows the ALJ took Plaintiff's insomnia into account in making his decision. For example, the ALJ noted that Plaintiff testified

6

that a lack of sleep interfered with her work. In addition, in assessing Plaintiff's mental limitations, the ALJ relied on the opinion of Dr. Lutz, who considered Plaintiff's sleep difficulties in his evaluation.

Finally, Plaintiff argues that the ALJ relied too heavily on the opinions of Dr. Hayes and Dr. Lutz, one-time consultative examiners, and Dr. Bland, a non-examining State Agency psychological examiner, and failed to give sufficient weight to the opinions of Plaintiff's treating physicians. However, an ALJ may properly rely on the opinions of consultative examiners and State agency psychological consultants in assessing a Plaintiff's RFC. 20 C.F.R. §§ 404.1527(d), 404.1527(f)(2)(i); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). In addition, as previously discussed, the ALJ may discredit the opinions of treating physicians to the extent they are inconsistent with the record as a whole. Thus, because the ALJ considered the opinions of each doctor in light of the record as a whole and properly allocated weight accordingly, his RFC determination must be upheld.

Overall, the ALJ's determination is both fully supported and sufficiently explained. Thus, the Court upholds the ALJ's determination of Plaintiff's RFC, finding that the ALJ's determination was based on substantial evidence of record and properly included only Plaintiff's credible limitations. *See Wildman*, 596 F.3d at 966.

### C. The ALJ properly assessed plaintiff's credibility.

Plaintiff also asserts that the ALJ did not properly evaluate her credibility in accordance with the factors set forth in *Polaski v. Heckler*. 739 F.2d 1320 (8th Cir. 1984). Particularly, Plaintiff argues that the ALJ did not fully consider her physical and mental limitations, which she argues all support her claim of disabling mental illness.

7

Credibility determinations are generally the province of the ALJ, and courts will defer to an ALJ's explicit credibility determination when it is supported by "a good reason." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). When assessing a claimant's credibility, "the ALJ must look to the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions." *Finch,* 547 F.3d at 935 (citing *Polaski,* 739 F.2d at 1322).

As a preliminary matter, the Court notes that Plaintiff does not dispute the ALJ's finding that she engaged in substantial gainful activity through October 26, 2007, nine months after her alleged onset of disability. Gainful employment for this period of time is inconsistent with allegations of disabling impairments; the regulations themselves state that one who can perform substantial gainful activity is not disabled. 20 C.F.R. §§ 404.1571, 416.971.

Furthermore, the ALJ noted several inconsistencies between Plaintiff's subjective allegations of disabling impairments and the substantial evidence of record. Plaintiff's allegations of disabling fibromyalgia and obesity, for example, are inconsistent with the medical evidence. In December 2007, one month after Plaintiff stopped working at a level of substantial gainful employment, a physical therapist noted that Plaintiff had "made significant improvement" and had "safe and functional" balance and ambulation. R. at 318. In February 2008, Dr. Li encouraged Plaintiff to continue to exercise. In addition, although Plaintiff complained of widespread pain in 2007, the record has large gaps in fibromyalgia pain treatment after that time. Whereas Plaintiff saw Dr. Lin in February 2008 for fibromyalgia-related pain, she did not seem him again until five months later. Thus, Plaintiff's failure to seek consistent treatment for fibromyalgia was inconsistent with her complaints of disabling pain.

Plaintiff's allegations of chronic obstructive pulmonary disease, coronary artery disease, and leg pain were also inconsistent with the medical evidence of record. For example, although Plaintiff cites an ejection fraction of 35% in September 2007, in October 2007, her left ventricular ejection fraction was 46% and Plaintiff was independent in her daily living activities and working full time. R. at 50, 254, 317. In addition, in March 2008, Plaintiff reported preparing meals, using a computer, and "sometimes [doing] household chores." R. at 49, 392.

Finally, Plaintiff's allegations of disabling depression are unsupported by evidence of record. Plaintiff did not consistently seek treatment for depression, and Dr. Lutz's examination revealed several normal mental health findings. R. at 52, 392. Specifically, Dr. Lutz indicated that Plaintiff was "responsive and cooperative," had "adequate insight and judgment," and "seemed able to understand and respond to normal conversation." R. at 52, 392. Dr. Lutz also opined that Plaintiff seemed able to "adapt to her environment" and "interact in moderately demanding social situations." R. at 52, 393.

Thus, the ALJ properly relied on significant evidence in the record as a whole, such as inconsistencies between Plaintiff's subjective allegations of pain and the medical evidence, to find Plaintiff not fully credible. The ALJ also set forth sufficient reasons to support his determination, and therefore, the Court affirms.

## Conclusion

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: March 12, 2012                              /s/ Greg Kays
                                                  GREG KAYS, JUDGE
                                                  UNITED STATES DISTRICT COURT